## LANOVA CORPORATION et al. v. NATIONAL SUPPLY CO.

### No. 7341.

Circuit Court of Appeals, Third Circuit.

Nov. 22, 1940.

Rehearing Denied Jan. 7, 1941.

See 116 F.2d 934.

236

See, also, 29 F.Supp. 119.

Charles Denby, Jr., and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa.

(John L. Jackson and Arthur H. Boettcher, both of Chicago, Ill., of counsel), for appellants.

Edward A. Lawrence, of Pittsburgh, Pa. (Wilber Owen, Allen Owen, and Carl F. Schaffer, all of Toledo, Ohio, of counsel), for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

BIGGS, Circuit Judge.

The court below held that the defendant's engine did not infringe Franz Lang's United States Patent No. 1,803,262 issued in April, 1931, upon an application filed in March, 1926. The Lang patent here in issue discloses a compression ignition oil engine. The plaintiffs, respectively, are the owners of the legal title to the Lang patent and the exclusive licensee thereunder and have appealed.

We have appended to this opinion simplified drawings showing the engine of the patent in suit and the defendant's engine. An examination of the first of these shows a compression space divided into three chambers, marked severally *d, g* and *b*. Between *b* and *g* is a throttling constriction *f*. The letter *c*, indicates a nozzle through which the fuel is injected into the chamber *g* toward the end of the compression stroke. The District Court found each of the three chambers to perform a separate and distinct function, co-operating to create an engine embodying the combination claimed by the patent. Claims 1 and 2 are in issue and we have set them forth in the margin.[1] The District Court

---

[1] Claims 1 and 2 of the patent in suit are as follows:

"1. In an oil-motor for self-ignition comprising a cylinder and a piston co-operating to form a compartment arranged to be reduced in volume by the piston, said cylinder being provided with a second compartment of fixed dimensions communicating with the first compartment by a passage tapering from the first compartment toward the second compartment and a throttling constriction between the tapering passage and the second compartment, in combination with a fuel-injector arranged in advance of the tapering passage to inject fuel into and toward the same substantially at the end of the compression-stroke of the piston, said piston being arranged to compress the air in said compartments so highly as to ignite by the heat of compression fuel injected into said highly compressed air.

"2. In an oil-motor for self-ignition comprising a cylinder and a piston co-operating to form a compartment arranged to be reduced in volume by the piston, said cylinder being provided with a second compartment of fixed dimensions communicating with the first compartment by a passage tapering from the first compartment toward the second compartment and a throttling constriction between the tapering passage and the second compartment, in combination with a fuel-injector whose axis coincides with the axis of the tapering passage in which is arranged in advance of the tapering passage to inject fuel into and toward the same substantially at the end of the compression-stroke of the piston, said piston being arranged to compress the air in said compartments so highly as to ignite by the heat of compression fuel injected into said highly compressed air."

held also that the chamber *b* was an auxiliary combustion chamber. If the learned District Judge was correct in holding *b* to be an auxiliary combustion chamber, he was also right in ruling that a main combustion chamber in juxtaposition to an auxiliary combustion chamber as shown by the patent constitutes a combination which is old in the art because a similar general arrangement is disclosed by White's British Patent No. 170,433 of 1921. Chamber *g* of the Lang patent is different in shape from the passage or chamber disclosed by the drawing accompanying White's patent. While the tapering shape of chamber *g* disclosed by the Lang patent is claimed by the plaintiffs to constitute the gist of Lang's invention and it is also asserted by the plaintiffs that the passage 3-4 shown in the diagram of the defendant's engine is its equivalent, we conclude that this is immaterial for the reasons hereafter stated.

The defendant contends that the feature of its engine is a "Dual Combustion" system which makes use of the main combustion chamber 5 and the auxiliary combustion chamber 2, connected by the passage 3-4, the engine being activated by fuel sprayed into the system by a special "throttling" type of nozzle. The evidence shows clearly that the defendant's engine operates by means of a main and an auxiliary combustion chamber.

We cannot agree with the view expressed by the District Court that chamber *b* of the engine of the patent is an auxiliary combustion chamber for Lang does not describe it as such in his patent. His specifications state in part, "This invention relates to self-igniting motors in which the chamber wherein the air is compressed by the piston on its compression-stroke is sub-divided into at least two chambers which communicate by at least one aperture having a throttling cross-sectional area. One of the chambers at least is arranged to be reduced in size or volume as the compression proceeds so as to force a flow of compressed air into the other chamber or chambers through a throttling constriction of the aperture or communication. According to the invention the parts are so arranged and constructed that fuel injected into the chamber before the end of the compression-stroke in a direction toward, or practically toward, the constriction meets such air-flow in a funnel-shaped space tapering toward and arranged in advance of the constriction." The specifications also state, "The air entering into the cylinder during the suction stroke is compressed during the next stroke, whereby a brisk flow of air through the throttling constriction *f* into the supplemental compartment *b* arranged on the cylinder is produced. The fuel nozzle *c* has the same longitudinal axis as said constriction, so that at least a portion of the fuel is injected into the core of the air current. This fuel injected through the nozzle towards the end of the compression stroke contacts already in the mixing funnel *g*, that means before the constriction *f*, with the air flowing into the compartment *b* and being heated and ignited on account of the compression, the compressed air stored in said compartment *b* flowing through the constriction into contact with the mixture to support and maintain the combustion as the piston recedes."

There is not a word in the patent which says that combustion or ignition takes place in chamber *b*. The fact is that Lang has described a method of compressing air in chamber *b* whereby it may flow into chamber *g* during the combustion period "to support and maintain the combustion as the piston recedes". Lang has described chamber *b* as an air cell and the engine of his patent is of the "air cell" type.[2] That Lang described an air cell Diesel engine is made all the more apparent by the amendments of his specifications and his cancellation of rejected claims in the Patent Office. Lang originally claimed, "A self-igniting oil motor provided with an *additional combustion space,* separated at least during the last part of the compression-stroke from the primary combustion space by a throttling constriction, through which during the last part of the compression-stroke compressed air and injected fuel flow into the *additional combustion space,* characterized by the feature that at least a part of the *additional combustion space* is arranged as a protuberance on the cylinder and that the compression is effected to such a high degree that the charge of fuel—and air mixture is ignited, also at the normal

---

[2] Dr. V. L. Maleev testified, "The term 'air cell' seems to be rather definite. This is a cell into which air is forced during the compression stroke and which discharges it back into the main combustion space when the piston moves away during the working stroke."

starting of the cold engine without any auxiliary starting device."[3]

■ This claim as well as all claims originally filed were rejected upon prior art patents, viz., White's British Patent No. 170,433, and Rundolf's Swedish Patent No. 28,055. Lang then amended his specifications and eliminated any reference to chamber *b* serving as a combustion space and substituted claims in which it was described merely as a second compartment. His "Remarks" accompanying these changes are set out in the margin.[4] Larsson's Swedish Patent No. 37,199 was then cited to Lang by the Examiner and in distinguishing Larsson's disclosures from his own Lang stated in part, "The second chamber * * * under applicant's invention is not a combustion chamber, but a compression chamber, which is designed to project highly compressed air into the said passage in the form of an air jet or stream during the working stroke thus prolonging the period of combustion and obtaining a more even and smoother application of power." Later, distinguishing his claimed invention from Takata's British Patent No. 189,069, Lang said "While under applicant's structure * * * the combustion takes place *outside*[5] the second chamber and is supported and promoted by the compressed air streaming out therefrom as the piston recedes, under Takata's construction the combustion is entirely *in*[5] the second chamber." The Examiner then rejected other claims of the amended application and indicated his doubt that Lang's engine embodied the principle of the air-cell, apparently believing that some combustion took place in chamber *b*. Lang removed these doubts from the Examiner's mind by explaining that at the time his original application was filed he did not know all that went on inside of the cylinder of his engine when it was running and that it was not until extensive research had been made that he was able to ascertain with certainty the operation of his engine which until then had been a matter of theory. When the Examiner again rejected the claims, Lang adhered to this position. The Patent Office was then convinced and the patent was issued. These facts present a plain case of file-wrapper estoppel, and in view of this record the plaintiffs cannot now claim that chamber *b* serves as a combustion chamber. See Starlock Mfg. Co. v. Kublanow, 3 Cir., 106 F.2d 495, 500; Fried-Krupp Aktien-Gesellschaft v. Midvale Co., 3 Cir., 191 F. 588, 610. We conclude therefore that the defendant's engine cannot be deemed to infringe Lang's patent for chamber 2 of the defendant's engine operates as a combustion chamber.

■■ The plaintiffs, citing the decision of this court in Jacobs v. Iodent Chemical Company, 3 Cir., 41 F.2d 637, 638, expressed doubt as to whether the doctrine of file-wrapper estoppel may be invoked here since the court below found that chamber *b* was an auxiliary combustion chamber.[6] In the cited case the Iodent Chemical Company did not appeal from the findings of fact of the lower court and it was held that it could not attack these findings on appeal. In the cited case, however, both parties were granted injunctive relief by interlocutory decree and both therefore could have appealed. In the case at bar, the defendant could not have appealed from the decree given in its favor.[7] Electrical Fittings Corporation v. Thomas & Betts Co., 307 U.S. 241, 242,

---

[3] Claim No. 1 of the original application. We have italicized words of particular importance in this and the quotations which follow.

[4] "The claims have been redrawn to remove the formal objection noted in the official letter.

"These claims are all distinguished from the references cited by the office by the funnel-shaped passage connecting the air-compressed compartment of varying volume with the supplemental compartment, said passage *tapering toward the latter compartment*. By this arrangement, as applicant has found, a more complete intermingling of the fuel injected into the compressed air in the compression-chamber and a greater certainty of proper auto-ignition are attained, while the supplemental compartment acts in conjunction with the funnel-shaped passage to maintain the combustion as the piston recedes."

[5] Emphasized by italics in the original document.

[6] See the thirteenth finding.

[7] Though there are circumstances under which a party may appeal from adverse findings of fact even though he is the recipient of a decree in his favor, such circumstances are not present in the case at bar.

59 S.Ct. 860, 83 L.Ed. 1263; Lindheimer v. Illinois Tel. Co., 292 U.S. 151, 176, 54 S.Ct. 658, 78 L.Ed. 1182. An appellee without a cross-appeal may urge upon the court any matter in the record in support of a decree in its favor even though such an argument may attack the reasoning of the trial court or insist upon the weight of evidence ignored by that court. Here the appellee does not attack the decree. It merely reasserts reasons which it urged below. See United States v. American Ry. Exp. Co., 265 U.S. 425, 435, 436, 44 S.Ct. 560, 68 L.Ed. 1087. The reasoning of the District Court is not binding upon us. We may support the decree upon grounds which the court below rejected. Accordingly it is affirmed.

## PATENT IN SUIT.

(Piston Part Way Down.)

## DEFENDANT'S ENGINE.

(Simplified Diagram.)